# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD J. GALLEN, ESQ. and ROBERT
MILLER, ESQ.,

      Plaintiffs,

      v.

CHESTER COUNTY, PENNSYLVANIA
and COUNTY OF CHESTER, DISTRICT
ATTORNEY'S OFFICE,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION
NO. 13-3245**

## <u>MEMORANDUM OPINION</u>

Tucker, C.J.                                                         February 9, 2015

      Presently before the Court is Defendants County of Chester District Attorney's Office

and Chester County, Pennsylvania's Motion for Summary Judgment and Memorandum of Law

in Support, Plaintiffs Edward J. Gallen and Robert Miller's Opposition to Defendants' Motion

for Summary Judgment, Defendants' Statement of Material Facts, and Defendants' Reply Brief

In Support of Motion for Summary Judgment. Upon careful consideration of the parties' briefs,

exhibits, and all other papers herein, and for the reasons set forth below, this Court will ***grant***

Defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND[1]

---

[1] On October 21, 2014, Defendants filed a Motion for Summary Judgment (Doc. 49), a Supporting Memorandum of
Law (Doc. 51), and a Statement of Stipulated Material Facts (Doc. 52). Plaintiffs filed their Response in Opposition
(Doc. 55) and a Statement of Facts with Plaintiffs' indexed record (Doc. 59) on November 21, 2014. Defendants
filed a Reply Brief in Support of their Motion for Summary Judgment (Doc. 63) on December 5, 2014. On
December 16, 2014, the Court issued an Order (Doc. 69) striking Plaintiffs' Response in Opposition and their
Statement of Facts and instructing Plaintiffs to refile their Response in Opposition to conform with the Court's
policies and procedures. Additionally, the Court struck Defendants' Reply Brief to allow for Defendants to respond
to Plaintiffs' Response once refiled.

      The Court issued a second Order on December 16, 2014 (Doc. 67), directing Defendants to submit to the
Court their Statement of Facts within ten days, and Plaintiffs to submit their Answer no later than ten days following
Defendants' submission. Pursuant to the Court's Order, Defendants refiled their Statement of Facts (Doc. 70) on

Defendant County of Chester District Attorney's Office ("DA's Office") employed Plaintiffs Edward J. Gallen and Robert Miller until they were discharged on January 12, 2012. Mr. Gallen was born on April 12, 1946. First. Am. Compl. ¶ 1. He was appointed to serve as an Assistant District Attorney ("ADA") in July 2000 at the level of Attorney I and served at that level through his termination in January 2012. Defs.' Statement of Facts ¶ 26. As an ADA, Mr. Gallen was responsible for, *inter alia*, preparing for and representing the DA's office at trials, supervising law students interning at the DA's Office, authorizing policemen to file criminal charges, and making public presentations on behalf of the DA's Office. Id. at ¶¶ 29-37. At the time of his discharge, Mr. Gallen prosecuted juvenile offenders and was 65 years old. First Am. Compl. ¶¶ 19, 28.

Mr. Miller was born on June 28, 1954. Id. ¶ 2. He was appointed as an ADA in January 1988 and served in the DA's Office until January 12, 2012. Id. at ¶ 22. In the 1990s, Mr. Miller expressed his unwillingness to prosecute drug cases. Defs.' Statement of Facts ¶ 66. He believes

---

December 19, 2014 with additional documentation recording Plaintiffs' prior stipulation to those facts. Plaintiffs neglected to file an Answer as directed by the Court. Consequently, Defendants argue that their Statement of Facts should be admitted as undisputed pursuant to Federal Rule of Civil Procedure 56.

Federal Rule of Civil Procedure 56(c)(1) imposes a requirement upon a party to address the supported factual assertions made by another party. See FED. R. CIV. P. 56(c)(1); accord FED. R. CIV. P. 56(e) (giving the court discretion to consider facts as undisputed "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)"). Rule 56(c)(1) provides, in pertinent part, that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to *particular parts of materials in the record*," or "showing that the materials cited do not establish the absence or presence of a genuine dispute." (emphasis added).

When a party fails to properly address another party's factual assertion, the court may:

(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
(4) issue any other appropriate order.

FED. R. CIV. P. 56(e). Here, Plaintiffs' Response in Opposition inconsistently cites to materials in the record and Plaintiffs did not file an Answer to Defendants' Statement of Facts, as directed by the Court. Pursuant to FED. R. CIV. P. 56(c)(3), "The court need consider *only* the cited materials, but it may consider other materials in the record." (emphasis added). Accordingly, the Court deems Defendants' Statement of Facts undisputed for the purposes of this motion. See FED. R. CIV. P. 56(e)(2). However, the Court has reviewed the materials to which Plaintiffs cite and the Court will rely on those materials to the extent that they conflict with Defendants' factual assertions.

that all drugs should be legalized. Id. at ¶ 67. In 2003, Mr. Miller was promoted to the position of Chief Deputy District Attorney - Trials. Id. at ¶ 50. In this position, Mr. Miller supervised the Deputy District Attorneys and ADAs who worked in the trial division and assisted then, District Attorney, Joseph Carroll, Esq., ("DA Carroll"), in developing office policies. Id. at ¶¶ 52, 55. At the time of his termination, Mr. Miller was 57 years old. First Am. Compl. ¶ 28.

The Chester County District Attorney is the chief law enforcement officer for the County. DA Carroll was elected as the Chester County District Attorney in November 2001 and served through 2011 when he decided not to run for reelection. Under DA Carroll's administration, Mr. Miller was promoted to the position of Chief Deputy District Attorney - Trials. Defs.' Statement of Facts ¶ 50. During his administration, DA Carroll also appointed the Honorable Patrick Carmody[2] ("Judge Carmody") to serve as First Assistant District Attorney. Id. at ¶ 11.

After DA Carroll decided not to run for reelection, Judge Carmody, Thomas P. Hogan ("DA Hogan"), and others expressed their interest in the open position. Id. at ¶ 10. The Republican Party endorsed DA Hogan for the election. Subsequently, DA Hogan and Judge Carmody met with the head of the Republican Party before the primary elections and DA Hogan agreed that he would not terminate Judge Carmody's employment if he were to win the election. Id. at ¶ 17. Instead, DA Hogan and Judge Carmody agreed that Judge Carmody would serve as Chief of Trials if DA Hogan won. Id. at ¶ 18.

DA Hogan was elected as the District Attorney for Chester County in November 2011 and assumed office on January 2, 2012. He had previously worked at the DA's Office as an ADA from 1998-2002. Id. at ¶ 13. Afterwards he served as an Assistant United States Attorney from 2002-2006 and later as a partner at a law firm from 2006-2011. Id. at ¶¶ 14-15. DA Hogan

---

[2] Judge Carmody was sworn in as Judge for the Court of Common Pleas of Chester County in January 2014, but previously served in the DA's office.

worked with Mr. Gallen for approximately two years when previously employed at the DA's Office. Id. at ¶ 42. While at the private law firm, he represented defendants in several juvenile matters opposite Mr. Gallen and felt that Mr. Gallen was, at times, non-responsive. Id. at ¶¶ 43-44. While at the DA's Office, DA Hogan also observed Mr. Miller in the courtroom on occasion. Id. at ¶ 105.

Following the 2011 election, DA Hogan assigned Judge Carmody to Chief of Trials, as they had agreed. In this role, Judge Carmody supervised all divisionary programs, continued working on major homicide cases, conducted educational training for attorneys, and served as the supervising Deputy District Attorney in Judge Streitel's courtroom. Id. at ¶ 117.

DA Hogan decided that he would appoint Michael Noone to the position of First Assistant and Charles Gaza to a newly created role of Chief of Staff. Id. at ¶ 76. Mr. Noone was age 37 at the time and Mr. Gaza was 42 years of age. See Pls.' Opp'n to Defs.' Mot. for Summ. J. at 4. Messrs. Noone and Gaza were DA Hogan's advisors during his campaign for District Attorney. Defs.' Statement of Facts ¶ 85. Mr. Noone had previously worked at the DA's Office from March 2003 to May 2007 and Mr. Gaza had worked as an ADA at the DA's Office from May 2001 to August 2008. Id. at ¶¶ 77, 82. Messrs. Noone and Gaza served with both Plaintiffs. Id. at ¶¶ 78, 83.

DA Hogan met with Messrs. Noone and Gaza in November 2011 and discussed position changes and the potential termination of personnel in the office, including Plaintiffs and other ADAs on staff. Id. at ¶ 88. DA Hogan received feedback about Plaintiffs' job performance from several individuals, including prosecutors working in the DA's Office, Chester County law enforcement, and the defense bar. Id. DA Hogan and Mr. Gaza also spoke about Mr. Gallen's job performance with a senior attorney in the Juvenile Unit, Renee Merion. Id. at ¶¶ 89-90.

In December 2011, DA Hogan decided to hire three new ADAs. Id. at ¶ 95. He also asked his Office Administrator, Cheryl Greener, to prepare termination paperwork for six individuals, including Plaintiffs. Id. at ¶ 96. On January 12, 2012, DA Hogan discharged Plaintiffs and two other attorneys, John Pavlov and Norman Pine. Id. at ¶ 113. In lieu of termination, Mr. Gallen elected to retire. Id. at ¶ 114.

Later in January 2012, DA Hogan explained to members of the press that he initiated several changes within the DA's Office and stated that "[he] needed to reorganize to establish what a modern prosecutor's office should be." First Am. Compl. ¶ 36; Defs.' Statement of Facts ¶ 115. DA Hogan's goals for his administration included: improving the prosecution of drug crimes through the creation of a separate drug unit, proactively using the powers of a grand jury to investigate crimes, initiating vertical prosecutions, creating an office manual so that ADAs were aware of expectations and procedures, improving training for new ADAs and assigning them mentors, and creating a critical response team prepared to handle crises. See Defs.' Statement of Facts ¶ 23.

In January 2014, Judge Carmody was sworn in as a Judge for the Court of Common Pleas of Chester County. After Judge Carmody was sworn in, Ron Yen, who is approximately five months older than Mr. Miller, assumed the role of Chief Deputy District Attorney - Trials. Id. at ¶ 118.

In Count I of Plaintiffs' First Amended Complaint, both Plaintiffs allege that Defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. In Count II, Plaintiff Gallen alleges that Defendants violated the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §§ 951, et seq. Defendants assert two independent arguments for the Court to grant summary judgment in their favor: 1) Plaintiffs are exempt from coverage

under the ADEA and PHRA because they are "personal staff" and/or "appointees on the

policymaking level" as defined by the ADEA; and 2) Plaintiffs' age discrimination claim lack

substance.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A "genuine" issue exists where there is a "sufficient evidentiary basis on which a

reasonable jury could return a verdict for the non-moving party." Byrne v. Chester Cnty. Hosp.,

No. 09-889, 2012 WL 410886, at *2 (E.D. Pa. Sept. 19, 2012) (citing Kaucher v. Cnty. of Bucks,

455 F.3d 418, 423 (3d Cir. 2006). "A factual dispute is 'material' if it might affect the outcome

of the case under governing law." Id. All factual doubts should be resolved, and all reasonable

inferences drawn, in favor of the nonmoving party. Torretti v. Main Line Hosp., Inc., 580 F.3d

168, 172 (3d Cir. 2009) (citing DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216

(3d Cir. 2007)). "The inquiry performed is the threshold inquiry of determining whether there is

the need for a trial-whether, in other words, there are any genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir 2007) (quoting Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). The movant is responsible for "informing the

court of the basis for its motion for summary judgment and identifying those portions of the

record that it believes demonstrate the absence of a genuine issue of material fact." Byrne, 2012

WL 410886, at *2 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

**DISCUSSION**

Defendants present two arguments supporting their motion for summary judgment. Because Plaintiffs' claims fail for lack of substance, the Court need not consider Defendants' argument concerning the ADEA's definition of "employees" and its exemptions for "personal staff" and/or "appointees on the policymaking level." Accordingly, the Court will analyze Plaintiffs' age discrimination claims pursuant to the burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 41 U.S. 792 (1973).

**I Count I: Plaintiffs' ADEA Claims**

Count I of the First Amended Complaint contends that Defendants violated Plaintiffs' rights under the ADEA when Defendants terminated Plaintiffs' employment and allegedly replaced Defendants with one or more younger attorneys.

The ADEA provides, in pertinent part, that "[i]t shall be unlawful for an employer . . .to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals age." 29 U.S.C. § 623(a)(1). Plaintiffs, therefore, must prove by a preponderance of the evidence that age was the "but-for" cause of their termination. See Gross v. FBL Fin. Serv., Inc., 557 U.S. 167, 177-78 (2009).

The Third Circuit has applied a modified version of the McDonnell Douglas burden-shifting framework to ADEA claims. See, e.g., Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); Waldron v. SL Indus., Inc., 56 F.3d 491, 494-95 (3d Cir. 1995). The McDonnell Douglas framework has three steps. First, the plaintiff bears the initial burden of production to demonstrate a *prima facie* case of discrimination. Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009). To do so, the plaintiff is required to show that the plaintiff: 1) is 40

years of age or older; 2) was discharged; 3) was qualified for the job; and 4) was replaced by a sufficiently younger person to create an inference of age discrimination. Id. at 689. Once the plaintiff offers sufficient proof of these four elements, then "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence . . . to support a finding that it had a legitimate, nondiscriminatory reason for the discharge." Keller, 130 F.3d at 1108. If the defendant satisfies this burden, "then the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." Smith, 589 F.3d at 690 (citing Starceski v. Westinghouse Elec. Corp., 54 F. 3d 1089, 1095 n.4 (3d Cir. 1995)). The plaintiff always bears the burden of persuasion, however. Id.

To make a showing of pretext to survive summary judgment, plaintiffs must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). "Under the motivating or determinative cause theory, a plaintiff must show 'that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class.'" Outten v. Genesis Health Care, LLC, 13-4708, 2014 U.S. Dist. LEXIS 111621, at *15-16 (E.D. Pa. Aug. 12, 2014) (quoting Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998)). "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken." Fuentes, 32 F.3d at 765. Instead, the plaintiff

> must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of

credence, . . . and hence infer that the employer did not act for the asserted non-discriminatory reasons.

Id. (citations and internal quotation marks omitted).

**A. Prong I –** *Prima Facie* **Case of Age Discrimination**

The Court begins its analysis with the *prima facie* case of age discrimination. In the instant matter, Defendants challenge only Plaintiff Miller's *prima facie* case of age discrimination. Defendants claim that Plaintiff Miller has failed to establish a *prima facie* case because he is unable to show that he was replaced by a sufficiently younger person to create an inference of age discrimination. Specifically, Defendants contend that Judge Carmody, who is one year younger than Mr. Miller, immediately replaced Mr. Miller as Chief Deputy - Trials. See Defs.' Mem. of Law at 22. After Judge Carmody was sworn in as a Judge for the Court of Common Pleas of Chester County in January 2014, Ron Yen, who is older than Mr. Miller, assumed the role of Chief Deputy District Attorney - Trials. See Defs.' Statement of Facts ¶ 118. Plaintiffs counter that Judge Carmody did not replace Mr. Miller, as Judge Carmody was tasked with different responsibilities than Mr. Miller. Instead, plaintiffs argue that Mssrs. Noone and/or Gaza replaced Mr. Miller and assumed many of his responsibilities.

The Court agrees with Plaintiffs and finds that Mr. Miller has established a *prima facie* case of age discrimination. Although Judge Carmody assumed the title of Chief Deputy - Trials, a title similar to that of Mr. Miller under DA Carroll's administration, the record reflects significant differences in their responsibilities. Compare Carmody Dep. 33:20-34:22, Mar. 14, 2014 with Carmody Dep. 20:25-23:18. Judge Carmody testified that as Chief of Trials he supervised all divisionary programs, continued working on major homicide cases, conducted educational training for attorneys, and served as the supervising Deputy District Attorney in Judge Streitel's courtroom. See Carmody Dep. 33:20-34:22. On the other hand, Judge Carmody

9

also testified that when Mr. Miller was Chief Deputy District Attorney - Trials, Mr. Miller was responsible for, *inter alia*, monitoring the trial team, tracking all trials tried in the DA's Office, meeting with district attorneys to review their performance, reviewing investigations, reviewing homicide by vehicle and determining whether to bring charges, and assigning matters to district attorneys. See Carmody Dep. 20:25-23:18. Judge Carmody further stated that when meeting with DA Hogan prior to the election, Judge Carmody created the title of Chief of Trials and that "there was [not] a chief of trials in the DA's Office before that." Carmody Dep. 30:9-13. This leads to the conclusion that Judge Carmody understood his role to be different from that of Mr. Miller. Moreover, Judge Carmody testified that he had observed Mr. Noone assume most of Mr. Miller's duties and Mr. Gaza adopted some of Mr. Miller's investigatory responsibilities. See Carmody Dep. 24:8-26:21. The Court concludes that Judge Carmody's responsibilities as Chief of Trials were sufficiently distinct from those of Mr. Miller, and, in fact, the duties of Mssrs. Noone and Gaza resemble many of those with which Mr. Miller was tasked.

The Court must next assess whether Mr. Miller has met the "sufficiently younger" standard of the *prima facie* case for age discrimination. With respect to the sufficiently younger standard, "there is no particular age difference that must be shown, but while different courts have held . . . that a five year difference can be sufficient, . . . one year difference cannot." Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) (citing Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) (citations omitted)). Additionally, whether one person in the protected class loses out to another in the protected class is irrelevant, so long as he has experienced an adverse action because of his age. See id. at 235.

Here, Defendants discharged Mr. Miller at age 57. At the time, Mr. Noone and Mr. Gaza were 37-years old and 42 years-old, respectively. See Pls.' Opp'n at 4. Accordingly, the

differences in age between Mr. Miller and Mssrs. Noone and Gaza satisfy the fourth prong of the *prima facie* case of age discrimination.

Defendants do not articulate any other challenges to either Plaintiffs' *prima facie* showing of age discrimination and Plaintiffs have offered sufficient proof to meet these elements.

### B. Prong 2 – Legitimate Non-Discriminatory Reasons for Discharge

The Court must next turn to the second prong in the McDonnell Douglas framework to determine whether Defendants proffer evidence sufficient to support a finding that they had a legitimate, non-discriminatory reason for terminating Plaintiffs' employment. See Keller, 130 F.3d at 1108. "The employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action; the defendant need not prove that the articulated reason actually motivated the action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997)).

Here, Defendants proffer several legitimate, non-discriminatory reasons for discharging Plaintiffs. DA Hogan was dissatisfied with Mr. Miller's job performance as Chief Deputy District Attorney – Trials because Mr. Miller failed to maintain a list of major cases, establish regular major case reviews, or contribute to the creation of an office manual with standard operating procedures. See Defs.' Statement of Facts ¶ 111. DA Hogan was familiar with Mr. Miller's courtroom performance and skills, found them to be unacceptable, and concluded that Mr. Miller was responsible "for the lack of adequate training of less experienced ADAs under the prior administration." Id. at ¶¶ 105-06, 108. He believed Mr. Miller would create problems for the DA's Office with respect to DA Hogan's goals for a drug unit, training, vertical

prosecutions, and grand jury investigations. <u>See</u> Hogan Dep. 95:10-96:5, 142:6-20, 143:21-145:4, May 29, 2014.

      Regarding Mr. Gallen, "DA Hogan determined that retaining Gallen would inhibit his ability to establish a high quality Juvenile Prosecution Unit." Defs.' Statement of Facts ¶ 112. DA Hogan had previously worked with Mr. Gallen at the DA's Office and later worked opposite Mr. Gallen when practicing at a private law firm. <u>Id.</u> at ¶¶ 42-43. He felt Mr. Gallen was often non-responsive. <u>Id.</u> at ¶ 44.

      The Court finds that Defendants have satisfied their relatively light burden to articulate legitimate non-discriminatory reasons for taking adverse employment action against Plaintiffs.

### C.  Prong 3 – Demonstrating Pretext

      The Court next turns to the third element of the <u>McDonnell Douglas</u> framework. Plaintiffs attempt to discredit the legitimate, non-discriminatory reasons for their termination proffered by Defendants.

      First, Plaintiffs aver that the only reason given at the time of their discharge was "unsatisfactory performance" and any reasons asserted thereafter are *post hoc* fabrications. <u>See</u> Pls.' Opp'n at 23. To challenge the "unsatisfactory performance" allegation, Plaintiffs assert:

> [DA Hogan] never spoke with either of plaintiffs' supervisors (Mssrs. Carroll and Carmody) prior to deciding to fire them, decided to ending [sic] their employment before taking office, engaged in virtually no analysis of their employment prior to firing them . . . ignored the high regard with which they were held by their superiors as made manifest by their personnel files (which he never even looked at before deciding to fire them), disregarded the fact that Mr. Gallen was 'tailor made' to prosecute juvenile offenders . . . and failed to seek an opinion as to the qualifications of Mr. Miller by reaching out to judicial officers such as Judge Scarcione (a former DA) and Judge Hall.

<u>Id.</u> at 24. Plaintiffs' contentions here are insufficient to discredit Defendants' proffered reasons. Plaintiffs appear to attack the degree of due diligence DA Hogan conducted to make an informed

decision about terminating their employment. However, the dispute at issue, here, is *not* whether Defendants' actions were "wise, shrewd, prudent, or competent," but rather whether discriminatory animus motivated their actions. Fuentes, 32 F.3d at 765.

Defendants present ample evidence for the Court to conclude that DA Hogan was sufficiently familiar with Plaintiffs' job performance and skills. DA Hogan previously worked with both Plaintiffs and observed their trial skills and performance in court. See Defs.' Statement of Facts ¶¶ 42-43, 104-05. He was unimpressed with Mr. Miller's performance on a murder case on which they worked together; he factored into his decision that experience, as well as other occasions he observed Mr. Miller in the courtroom. See id. at ¶¶ 104-06. With respect to Mr. Gallen, DA Hogan also worked opposite Mr. Gallen when he was in private practice and noted that he was dissatisfied with Mr. Gallen's unresponsiveness in some matters. See id. at ¶ 44. Additionally, the record reflects that DA Hogan gathered feedback about Plaintiffs from members of his transition team (Mr. Noone and Mr. Gaza), other prosecutors in the DA's office, detectives, and other law enforcement officers. See id. at ¶¶ 88-90, 108-09; Gaza Dep. 62:11-24, May 28, 2014.

Certainly, DA Hogan could have solicited feedback from others, such as Plaintiffs' former supervisors or judges who witnessed Plaintiffs' courtroom skills, but such an exhaustive review is not required. See Santiago v. Brooks Range Contract Servs., No. 11-7269, 2014 U.S. Dist. LEXIS 139231, at *31 (E.D. Pa. Sept. 30, 2014) (stating that the issue is not whether an employer "conducted a comprehensive investigation or whether they made a wise or prudent decision"). Furthermore, Plaintiffs cannot demonstrate discriminatory animus simply by pointing to positive performance reviews from former supervisors. See, e.g., Wang v. Amergen Energy Co., No. 03-CV-2123, 2004 U.S. Dist. LEXIS 15429, at *26 (E.D. Pa. July 15, 2004) ("Good

evaluations of performance cannot establish that unsatisfactory evaluations are pretextual.");

Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Different supervisors may impose

different standards of behavior, and a new supervisor may decide to enforce policies that a

previous supervisor did not consider important."); Sullivan v. Nationwide Life Ins. Co. of Am.,

720 F. Supp. 2d 483, 502 (D. Del. 2010) (finding that "past positive performance reviews are

insufficient, alone to establish that [defendant's] proffered reasons for termination were mere

pretext").

 Second, Plaintiffs attack Defendants' statement to the Equal Employment Opportunity

Commission ("EEOC"), which describes DA Hogan's reasons for discharging Plaintiff Gallen.

Defendants' EEOC statement explains:

> After taking office and following discussions with his transition team and the rest
> of the District Attorney['s] office staff, D.A. Hogan made the business decision to
> reorganize the D.A. Office staff and terminate four staff attorneys, including
> Gallen. The individuals selected for termination included: Robert Miller, John
> Pavloff, Norm Pine and Edward Gallen. . . . Several non-attorney staff members
> were also terminated. The decision on who to terminate was based on job
> performance history, disciplinary history, specific skill sets of employees and
> recommendations from current staff and D.A. Hogan's transition team.

Pls.' Opp'n at Pls.' R. 1-2. Specifically, Plaintiffs challenge the temporal assertions in this

statement, as well as the validity of some of the proffered reasons for Mr. Gallen's discharge.

Plaintiffs argue that DA Hogan decided to terminate their employment prior to taking office and

therefore did not rely on discussions he had with anyone after taking office. Additionally,

Plaintiffs aver that neither of them had been previously disciplined, and as such, Defendants'

statement relating to their disciplinary history was fabricated.

 Plaintiffs' challenges fail to undermine the legitimacy of the reasons given in Defendants'

EEOC statement, however. Firstly, Plaintiffs cannot demonstrate that DA Hogan categorically

determined that he would discharge them prior to taking office. Plaintiffs direct the Court's

attention to e-mail exchanges between DA Hogan and Ms. Greener, as well as Ms. Greener's deposition. See Pls.'Opp'n at 4; id. at Pls.' R. 45, 189-96. However, Ms. Greener's testimony pertaining to Plaintiffs' discharge simply reveals that DA Hogan *contemplated* discharging Plaintiffs prior to taking office, but he had not finalized his decision. See Greener Dep. 41:12-42:24, June 27, 2014 (stating that DA Hogan "was going to weigh on the interviews he had individually" before finalizing Plaintiffs' termination). DA Hogan's deposition testimony further suggests this. See Hogan Dep. 56:9-23 (stating that he "had not completely made up [his] mind yet"). The record shows that DA Hogan interviewed all the attorneys in the DA's Office, including Plaintiffs, and sought feedback from multiple sources before terminating Plaintiffs' employment. See Defs.' Statement of Facts ¶¶ 89-91, 98-99, 108-09; Gaza Dep. 62:11-24.

Secondly, the Court disagrees with Plaintiffs' reading of Defendants' EEOC statement, which states, in relevant part, "The decision on who to terminate was based on job performance history, disciplinary history, specific skill sets of employees and recommendations from current staff and D.A." Pls.' Opp'n at Pls.' R. 1-2. Here, Defendants do not specifically identify disciplinary history as the actual reason for Plaintiffs' discharge. Rather, Defendants list a number of factors, which DA Hogan considered when deciding to terminate various staff members (staff attorneys and non-attorneys), including Plaintiffs. As such, the reasons listed in the EEOC statement refer to a variety of reasons why *different* staff members were discharged; all of these reasons in total do not necessarily pertain to either Plaintiff.

Next, Plaintiffs attempt to show pretext by arguing that DA Hogan failed to raise any concern about Mr. Miller's position regarding the decriminalization of drugs prior to or when terminating Mr. Miller. Additionally, Defendants failed to raise this issue before the EEOC. The Court is not persuaded by Plaintiffs' efforts here. First, "[i]n the early 1990s, Miller informed

then Chief Deputy District Attorney - Trials, John Crane, that he did not want to prosecute drug cases and would rather do other types of cases." Defs.' Statement of Facts ¶ 66; Miller Dep. 109:5-19, May 19, 2014. Mr. Miller's request to be assigned to cases other than those prosecuting drug crimes was motivated by his belief that the war on and prohibition of drugs have been very costly and that all drugs should be legalized. See Miller Dep. 109:20-25, 113:11-114:1. It is reasonable to believe that DA Hogan was familiar with Mr. Miller's position on the legalization of drugs given that this was Mr. Miller's position many years prior to DA Hogan's administration and even when they worked together at the DA's Office. Moreover, it is clear that DA Hogan's goals for the DA's Office included the creation of a drug unit. Defs.' Statement of Facts ¶ 23. Accordingly, it is plausible that DA Hogan would view Mr. Miller's attitude toward prosecuting drug crimes to conflict with his goals for reorganizing the DA's Office. Furthermore, even if the Court were to find unworthy of credence Defendants' concern about Mr. Miller's position on drug prosecutions, Defendants have proffered several alternative and independent legitimate, nondiscriminatory reasons to support their burden of production. Cf. Logue v. Int'l Rehab. Assoc., Inc., 837 F.2d 150, 155 (3d Cir. 1988) (holding that the district court erred in failing to consider all of the proffered evidence of legitimate business reasons for plaintiff's termination and that "if an employer articulates several alternative and independent legitimate, nondiscriminatory reasons, the falsity of one does not necessarily justify finding the remaining articulated reasons pretextual").

Plaintiffs further attempt to establish pretext by referencing the ages of prosecutors retained, hired, and fired. Plaintiffs note that DA Hogan discharged them and two other ADAs in their fifties (Pine and Pavloff) and hired five younger ADAs: Julie Hess (41), Robert Jefferson (27), Kevin Pierce (30), Michael Noone (37), and Charles Gaza (42). Pls.' Opp'n at 4. Plaintiffs

fail to provide any evidence that they were similarly situated to any of the new hires outside of the protected class. See Santiago, 2014 U.S. Dist. LEXIS at *26-27 (rejecting plaintiffs' assertion that defendants favored younger employees because of lack of evidence that plaintiff was similarly situated to any of these individuals). Moreover, Plaintiffs' argument is undercut by the fact that DA Hogan hired other individuals in the protected class: Julie Hess (41) and Charles Gaza (42). "It is well established that an employer's favorable treatment of other members of the protected class is relevant in determining whether the employer was motivated by discriminatory intent." Id. at 27 (citing Reeves v. Sanderson Plumping Prods., Inc., 530 U.S. 133, 153 (2000)). Defendants' favorable treatment of people in the protected class creates an inference that Defendants lacked age-based animus. Plaintiffs' reference to the ages of the five new hires does not constitute the kind of weakness or implausibility that would permit a reasonable factfinder to infer pretext. See Shipe v. Haverford Twp., No. 09-00719, 2010 U.S. Dist. LEXIS 13702, at *25-26 (E.D. Pa. Feb. 15, 2010) (rejecting as an example of the logical fallacy of false cause plaintiff's argument that because four of the oldest employees were discharged, discriminatory animus could be inferred).

Finally, in an effort to show discriminatory animus, Plaintiffs turn to DA Hogan's statements to the media concerning his reorganization of the DA's Office to establish "a modern prosecutor's office." See Pls.' Opp'n at 10; id. at Pls.' R. 61-63. Plaintiffs' efforts here are unavailing. DA Hogan's comments about creating "a modern prosecutor's office" do not evidence age-based animus. These comments are at best ambiguous stray remarks insufficient to support an inference of discrimination. Indeed, courts have refused to infer age-based animus with similar statements. See, e.g., Klastow v. Newtown Friends Sch., 515 Fed. Appx. 130, 135 (3d Cir. 2013) (refusing to find age discrimination where employer testified that he sought

"energetic dynamic go-getter[s] . . ." when hiring); <u>Snik v. Verizon Wireless</u>, No. 03-CV-2976, 2004 U.S. Dist. LEXIS 9527, at *33 n.6 (E.D. Pa. May 21, 2004) (rejecting plaintiff's argument that the word "dynamic" was a code word for "young" and concluding that "an isolated remark . . . is insufficient to raise an inference of discrimination and defeat a motion for summary judgment"); <u>Diflorio v. Kleckner</u>, No. 11-4405, 2012 U.S. Dist. LEXIS 30217, at *19-20 (E.D. Pa. Mar. 7, 2012) (finding that management's comments that they were "looking to change the culture" were ambiguous, did not refer to age, and did not support an inference of discrimination). Even when employers directly reference age or use terms associated with age, courts have failed to find evidence of age discrimination. <u>See, e.g.</u>, <u>Waggoner v. City of Garland, Tex.</u>, 987 F.2d 1160, 1166 (5th Cir. 1993) (finding that "stray remarks" that plaintiff was an "old fart" and that younger person could do faster work were insufficient to establish age discrimination); <u>Lincoln v. Momentum Sys. Ltd.</u>, 86 F. Supp. 2d 421, 432 (D.N.J. 2000) (concluding that manager's comment that company was looking for "people who are kind of fresh and young and who have no experience that we can mold into successful account executives" was too weak to raise a reasonable inference of age discrimination); <u>Wood v. Town of Warsaw</u>, 914 F. Supp. 2d 735, 742 (E.D.N.C. 2012) (concluding that decision to terminate police chief for poor job performance was not pretext for age discrimination despite town manager's statements that board wanted a "modern department," that chief was "from the old school," that "we need to get up in the new century and we need somebody that can progress the department and get us into the next generation," and that the board wanted "younger blood").

The record shows that DA Hogan believed a modern prosecutor's office required:

creating a Drug Unit within the District Attorney's Office; proactively using a grand jury for investigations; increasing the use of detectives on homicides and other major cases; creating an office manual so that ADAs were aware of expectations and procedures and a law enforcement manual so that law

enforcement officers were likewise informed of the District Attorney's expectations; improving training by establishing trial advocacy training for every new ADA and assigning them a mentor; conducting monthly trainings for all ADAs on important topics, and yearly updates on prosecutors' ethical obligations; putting Deputy District Attorneys back in the courtroom so that they could be in touch with day-to-day occurrences in court; and creating a critical response team prepared to handle crises such as a school shooting.

Defs.' Statement of Facts ¶ 116; see also Hogan Dep. 115:6-117:4. Nothing in this description of a modern prosecutor's office suggests that DA Hogan was motivated by age-based animus. Instead, this explanation reflects DA Hogan's business judgment regarding the changes needed to improve the DA's Office. DA Hogan's reference to a "modern prosecutor's office" bears no relation to Plaintiffs' age.

For the foregoing reasons, the Court concludes that Plaintiffs have failed to establish that Defendants terminated their employment based upon Plaintiffs' age. Thus, Count I of Plaintiffs' First Amended Complaint is dismissed.

## II Count II: Plaintiff Gallen's PHRA Claim

Count II of Plaintiffs' First Amended Complaint alleges violations of the PHRA on behalf of Plaintiff Gallen only. The PHRA prohibits an employer from refusing to employ, discharging, or otherwise discriminating against an individual on the basis of age. 43 Pa. C.S.A. § 955(a). Pennsylvania courts generally interpret the PHRA in the same manner as its federal counterparts. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). As such, the Court will analyze Mr. Gallen's PHRA claims consistent with his ADEA claims. Accordingly, Mr. Gallen's PHRA claims also fail and the Court dismisses Count II of Plaintiffs' First Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court dismisses Counts I and II of Plaintiffs Edward J. Gallen and Robert Miller's First Amended Complaint. The Court concludes that there is no

genuine dispute as to any material fact and grants summary judgment in favor of Defendants County of Chester District Attorney's Office and Chester County, Pennsylvania. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD J. GALLEN, ESQ. and ROBERT MILLER, ESQ.,** | : : : | |
| **Plaintiffs,** | : : | |
| **v.** | : : : | **CIVIL ACTION NO. 13-3245** |
| **CHESTER COUNTY, PENNSYLVANIA and COUNTY OF CHESTER, DISTRICT ATTORNEY'S OFFICE,** | : : : : | |
| **Defendants.** | : : | |

**ORDER**

AND NOW, this 9th day of February, 2015, upon consideration of Defendants County of Chester District Attorney's Office and Chester County, Pennsylvania's Motion for Summary Judgment (Doc. 49) and Memorandum of Law in Support (Doc. 51), Plaintiffs Edward J. Gallen and Robert Miller's Opposition to Defendants' Motion for Summary Judgment (Doc. 71), Defendants' Statement of Material Facts (Doc. 70), Defendants' Reply Brief In Support of Motion for Summary Judgment (Doc. 74), and all other briefs, exhibits, and materials submitted by the parties, **IT IS HEREBY ORDERED AND DECREED** that Defendants' Motion is **GRANTED.**

IT IS FURTHER ORDERED that the Clerk of Court shall mark this matter as **CLOSED** for statistical purposes.

**BY THE COURT:**

/s/ Petrese B. Tucker

_____

**Hon. Petrese B. Tucker, C.J.**

21